PACIFIC FIRE INSURANCE COMPANY AND OTHERS v. KENNY BOILER & MANUFACTURING COMPANY.[1]

December 31, 1937.

Nos. 31,386, 31,408.

[1]Reported in 277 N. W. 226.

*O'Brien & Quinlivan,* for plaintiffs.
*Alfred R. Sundberg,* for defendant.

GALLAGHER, CHIEF JUSTICE.

Prior to June 10, 1935, the United States Gypsum Company maintained a water tower on the premises upon which its St. Paul plant is situated. The tank was supported by three legs which rested upon the top of the walls of one of its buildings. Each leg consisted of two channel irons held together and reinforced by steel straps riveted to them. In May, 1935, defendant by contract with the United States Gypsum Company undertook to manufacture steel

plates to replace the straps on the lower legs and to attach the plates to the legs. Defendant manufactured the plates but delegated the task of attaching them to one Nelson, an experienced steel erector. In order to attach the plates it was necessary first to remove the steel straps. To compensate for the weakening of the leg from which the straps were first removed, Nelson erected a 6 x 6 timber next to the weakened leg and placed a jack on the upper end of the timber so as to lend support to the tank. Two hours after the work of removing the straps was commenced on the morning of June 10, the tank for some cause fell onto the building upon which the legs rested, demolishing a part of it. The property damage was paid by the plaintiff insurance companies, which, under their subrogation rights, bring suit on the theory that the fall of the tank was due to the negligence of Nelson in the performance of his contract with defendant, and that defendant is subject to liability for such negligence.

For the purpose of this appeal it may be conceded that Nelson was an independent contractor. The trial court instructed the jury that if he was, defendant was not liable. After a verdict for defendant, plaintiffs moved for judgment notwithstanding or for a new trial. A new trial was granted on the ground that the court erred in charging the jury in the above manner. Defendant appeals from the order granting a new trial, and plaintiffs appeal from the order denying their motion for judgment notwithstanding. The appeals were argued together and will be decided together.

The questions presented are (1) whether a contractor is liable to his contractee for damage to the realty of the latter caused by the negligence of an independent subcontractor while performing a part of the contractual duties of the contractor; and (2) whether it conclusively appears that the contractee was not negligent.

■ As a limitation to the doctrine of *respondeat superior* this court has laid down the rule that an employer is not liable for the consequences of the negligent acts of an independent contractor (Aldritt v. Gillette-Herzog Mfg. Co. 85 Minn. 206, 88 N. W. 741; Restatement, Torts, § 409) unless he adopts or ratifies the negligence of the independent contractor which causes the harm of which

complaint is made. Bast v. Leonard, 15 Minn. 235 (304). But the tendency is to enlarge the operation of the doctrine of *respondeat superior*, and it is a limit which has often been exceeded. Elliason v. Western C. & C. Co. 162 Minn. 213, 202 N. W. 485; Salmond, Torts (9 ed.) § 31. Indeed it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions. Harper, Torts, § 292; Restatement, Torts, §§ 410-429.

One exception is the rule imposing liability upon a lessor for harm suffered by his lessee because of the negligence of an independent contractor employed by the lessor to make repairs which the lessor is bound by covenant with the lessee to make. Restatement, Torts, § 419; Peerless Mfg. Co. v. Bagley, 126 Mich. 225, 85 N. W. 568, 53 L. R. A. 285, 86 A. S. R. 537. This last situation is persuasively analogous to the instant case. By contracting to attach the plates, defendant was under an absolute duty to perform its contract. It was not relieved of its duty to act by delegating the work of attaching the plates to an independent subcontractor; in legal contemplation the acts of the subcontractor constituted defendant's performance of his contractual duties. 2 Williston, Contracts (Rev. ed.) §§ 411, 411A. Where one person owes another a contractual duty to act, the law imposes upon the person owing that duty the further duty of acting with due care in the performance of his contract so as not to injure the contractee's person or property. This duty is nondelegable. See note, Restatement, Torts, p. 1101. That is, the performance of the contract may be delegated to another, but this delegation does not relieve the contractor of the duty to act, or of his duty to act with due care. Consequently defendant is subject to liability for damage suffered by the contractee as a result of the negligence of the independent subcontractor. Dixie Stage Lines v. Anderson, 222 Ala. 673, 134 So. 23; Hooey v. Airport Construction Co. 253 N. Y. 486, 171 N. E. 752; Schutte v. United Elec. Co. 68 N. J. L. 435, 53 A. 204; John H. Radel Co. v. Borches, 147 Ky. 506. 145 S. W. 155, 39 L.R.A.(N.S.) 227.

■ Plaintiffs claim that the evidence, regardless of the view taken, does not justify a verdict for defendant. Plaintiffs attempt-

ed to prove that the accident was caused by the subcontractor's negligent failure to compensate adequately for the weakening of the leg from which the straps were removed; defendant sought to show that the collapse was due to the weakness of the wall upon which the leg rested, and that the contractee's negligent failure to empty the tank before the commencement of the work contributed to the fall of the tank. There was some evidence to support each of these claims. The question of the cause of the accident was properly for the jury.

■ Several hours after the accident and shortly before he died, the subcontractor's helper made the following statement: "The building was rotten, Mother, it collapsed, the shoring held. The tank was full of water." Plaintiffs contend that the trial court erred in admitting this into evidence. Although the questions previously decided are decisive of the case, this point will be treated for the guidance of the court upon a retrial. While it may be that the circumstances under which it was spoken make the statement unobjectionable on the ground of afterthought or lack of spontaneity (Jacobs v. Village of Buhl, 199 Minn. 572, 273 N. W. 245), it was inadmissible for the reason that it states a conclusion rather than facts from which the jury could draw a conclusion. Quarfot v. Security N. B. & T. Co. 189 Minn. 451, 249 N. W. 668.

The order of the trial court denying the motion for judgment notwithstanding and granting the motion for a new trial is in all things affirmed.